1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCISCA RODARTE,

                    Plaintiff,

          v.

TRIDENT SEAFOODS
CORPORATION,

                    Defendant.

CASE NO. C13-1028JLR

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Before the court is Defendant Trident Seafoods Corporation's ("Trident")

unopposed motion for summary judgment.  (Mot. (Dkt. # 21).)  Plaintiff Francisca

Rodarte filed this lawsuit against Trident over a year ago, and has since participated in

discovery and filed several documents with the court including a motion for default

judgment.  (*See* Dkt. ## 5, 13, 14.)  However, when Trident filed a motion for summary

judgment disposition of the entire case in late July, Ms. Rodarte failed to file any

ORDER- 1

1  response.  (*See* Dkt.)  The time for filing a response has now passed, and the motion is

2  ripe for the court's consideration.  Accordingly, the court has examined the motion, the

3  governing law, the record, and the submissions of the parties.  Being fully advised, the

4  court finds that Trident has demonstrated that it is entitled to judgment as a matter of law

5  and therefore GRANTS Trident's motion for summary judgment.

6  ## II.   BACKGROUND

7  This is an employment discrimination case set in a remote Alaskan cannery.

8  Plaintiff Ms. Rodarte worked as an employee of the cannery for over twenty years.

9  (Compl. (Dkt. # 3) ¶ 5.)  Defendant Trident owns and operates the cannery, which is

10 situated in Akutan, Alaska, a tiny harbor town on Akutan Island in southeast Alaska.

11 (Compl. ¶ 6; Heine Decl. (Dkt. # 26).)  Akutan is located in the Aleutian chain a "short

12 distance" from the comparatively larger town of Dutch Harbor but can be reached only

13 by seaplane or boat.  (Heine Decl. ¶ 2; Compl. ¶ 9.)  Trident's Akutan facility—

14 commonly referred to as a "shore plant"—operates year round, houses as many as 1200

15 employees at any given time, and is capable of processing three million pounds of fish

16 per day.  (Heine Decl. ¶ 2.)

17 The events that gave rise to this lawsuit took place in late October 2011.  (Compl.

18 ¶ 6.)  Ms. Rodarte alleges that, around that time, she was suffering from a "severe

19 toothache."  (*Id.* ¶ 7.)  Evidently, a crown had fallen off of her tooth several weeks earlier

20 and the tooth that remained began to cause her pain.  (*Id.*)  She claims that by late

21 October, her face was swollen and she was in "obvious pain."  (*Id.*)  On October 27,

22 2011, she visited a health care center in Akutan where she was seen by a doctor.  (*Id.*

¶¶ 8, 9.)  She was given penicillin and ibuprofen and told to gargle salt water.  (*Id.*;

Newberry Decl. (Dkt. # 25) ¶ 8.)  The physician who treated her observed that she "could

speak without apparent distress and did not appear to be otherwise incapacitated by pain."

(Newberry Decl. ¶ 7.)  He advised Ms. Rodarte that if her symptoms did not improve, she

should return to the clinic to "figure out a new approach."  (*Id.* ¶ 9.)  Ms. Rodarte did not

return to the clinic.  (*Id.* ¶ 11.)  There was no dentist on Akutan, although there was a

dentist in nearby Dutch Harbor.  (*Id.* ¶ 5; Compl. ¶ 9.)

On October 30, 2011, a boat arrived to take workers to Dutch Harbor.  (Compl.

¶ 10.)  At that time, Ms. Rodarte had three days remaining on her seasonal contract with

Trident.  (*Id.*)  She alleges that she asked the assistant plant manager if she could leave

three days early to seek treatment for her toothache but that he told her to wait until her

contract expired.  (*Id.*)  Ms. Rodarte then quit her job, alleging that she "was

incapacitated by pain and had no reasonable alternative than to quit to obtain medical

services."  (*Id.* ¶ 11.)  She alleges that she was "forced to quit," and that as a result she

had to purchase her own airplane ticket from Dutch Harbor to Seattle for $839.40.  (*Id.*

¶ 13.)  She returned to her home town of Walla Walla shortly thereafter, and received

dental treatment just over a week later—twelve days after she quit her job and left

Akutan.  (Hendershott Decl. (Dkt. # 22) Ex. A ("Rodarte Dep.") at 129, 134).)  She had a

tooth extracted on December 27, 2011.  (*Id.*)

Ms. Rodarte alleges that she suffered adverse employment consequences because

of her decision to quit.  (Compl. ¶ 15.)  She claims that Trident did not hire her until later

than usual in the 2012 season.  (*Id.*)  She also says she received an email stating that she

1   was not rehired for the 2012 season but that she received another email hours later saying

2   she was, in fact, rehired.  (*Id.*)  She worked for Trident for three seasons in 2012 and

3   2013, including the very next season after she quit.  (Rodarte Dep. at 183-84.)

4       Ms. Rodarte eventually filed an employment discrimination claim with the Alaska

5   Human Rights Commission.  (Compl. ¶ 17.)  Trident participated in the Commission's

6   investigation.  (*See* Hendershott Decl. Ex. D.)  The Commission eventually found that the

7   allegations of discrimination were not supported by substantial evidence and dismissed

8   her claims.  (*Id.*)

9       Ms. Rodarte filed this complaint in June, 2013.  (*See* Dkt.)  In her complaint, she

10  alleges employment discrimination, constructive discharge, retaliation, and negligence

11  claims against Trident.  (Compl. ¶¶ 20-21, IV.2-3.)  These claims are based on Trident's

12  refusal to allow her to depart Akutan early to get medical care for her toothache.  (*See id.*)

13  She also alleges a claim for defamation based on Trident's participation with the Alaska

14  Human Rights Commission's investigation of her claims.  (*Id.* ¶¶ 19-20.)  She alleges that

15  Trident employees lied to the Commission, which resulted in a "report full of lies" that

16  "destroys her work reputation."  (*Id.* ¶ 20.)  She requests a damages award of

17  $1,075,000.00.  (*Id.* ¶¶ 22, IV.4.)

18      Trident moved for summary judgment, arguing primarily that Ms. Rodarte has no

19  evidence to support any of her claims.  (*See* Mot.)  Trident has produced a substantial

20  amount of documentary and testimonial evidence in support of its arguments.  (*See id.*)

21  In contrast, Ms. Rodarte has not filed a response brief, let alone any evidence that tends

22

1   to favor her version or interpretation of events.  (*See* Dkt.)  Thus, Trident's motion for

2   summary judgment is unopposed.

3   ### III.   ANALYSIS

4   **A.   Standard on an Unopposed Summary Judgment Motion Where the Plaintiff
    is Pro Se**

5           In general, summary judgment is appropriate if the evidence, when viewed in the

6   light most favorable to the non-moving party, demonstrates "that there is no genuine

7   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

8   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen*

9   *v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect

10  the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

11  factual dispute is "genuine" if the evidence is such that reasonable persons could disagree

12  about whether the facts claimed by the moving party are true.  *Aydin Corp. v. Loral*

13  *Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

14          The moving party bears the initial burden of showing that there is no genuine issue

15  of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477

16  U.S. at 323.  If the moving party meets its burden, then the non-moving party "must make

17  a showing sufficient to establish a genuine dispute of material fact regarding the

18  existence of the essential elements of his case that he must prove at trial."  *Galen*, 477

19  F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in

20  the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378

21  (2007).  The ultimate question on a summary judgment motion is whether the evidence

22

1  "presents a sufficient disagreement to require submission to a jury or whether it is so one-

2  sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

3        Even where a summary judgment motion is unopposed, the Ninth Circuit takes the

4  view that a non-moving party's failure file a response as required by local rules "does not

5  excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement

6  to judgment as a matter of law." *See Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir.

7  2003) (citing Fed. R. Civ. P. 56).  Thus, heeding the requirements of *Martinez*, the court

8  will analyze Trident's motion for summary judgment on the merits.  However, where a

9  defendant has met its burden of demonstrating an absence of material factual issues for

10  trial, the court cannot create an issue for a plaintiff who has not submitted any

11  countervailing evidence.

12        The fact that Ms. Rodarte is appearing pro se does not alter the applicability of

13  these general summary judgment rules.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.

14  1995) (noting that although the court construes pleadings liberally in their favor, "[p]ro se

15  litigants must follow the same rules of procedure that govern other litigants"); *Semper v.*

16  *JBC Legal Group*, No. C04-2240L, 2005 WL 2172377, at *1 (W.D. Wash. Sept. 6,

17  2005).[1]  Accordingly, although Ms. Rodarte is appearing pro se, the court is obligated to

18  hold her to the same standards as it would any other non-moving party on a motion for

19

20       [1] In fact, in *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986), the Ninth Circuit rejected
the argument that pro se non-prisoner litigants are entitled to notice from the court concerning

21  Rule 56 requirements.  *Id.* at 1364.  In doing so, the Ninth Circuit unequivocally stated that "pro
se litigants in the ordinary civil case should not be treated more favorably than parties with

22  attorneys of record."  *Id.*

summary judgment.  Trident bears the initial burden of showing there are no material factual disputes and it is entitled to judgment as a matter of law; if it does so, the court is not required to create disputes where there is no contrary evidence and may grant summary judgment in Trident's favor.

**B.      There Are No Genuine Disputes of Material Fact**

As an initial matter, Trident has met its burden of demonstrating that there are no genuine issues of material fact that would preclude summary judgment.  Trident presents evidence to support its factual assertions where they differ from the assertions made in Ms. Rodarte's complaint.  Ms. Rodarte has presented no evidence whatsoever to contradict Trident's facts.  The court has examined the entire record in this case and determined that nothing contained therein creates a dispute of material fact, whether submitted by Trident or Ms. Rodarte.  Accordingly, there are no "genuine" disputes because the evidence is such that reasonable persons could not disagree about whether the facts claimed by Trident are true.  *See Aydin Corp.*, 718 F.2d at 902.  This is not to say, of course, that every fact propounded by Trident is true, only that a reasonable person viewing the evidence in the record could not reasonably conclude otherwise.  *See id.*

**C.      Trident is Entitled to Judgment as a Matter of Law**

The court has examined each of Ms. Rodarte's claims in light of all the evidence in the record and concludes that Trident is entitled to summary judgment on each claim. In general, Trident presents evidence to support its version of what happened:  that Ms. Rodarte demanded to leave Akutan three days early, that her supervisor rejected her

ORDER- 7

1   demand for reasons that were not discriminatory, that she quit on the spot, and that

2   Trident hired her back the following year without any repercussions or other action that

3   could be construed as discriminatory or otherwise unlawful.  Ms. Rodarte has presented

4   no evidence at all to the contrary, and there is nothing anywhere in the record that

5   suggests a genuine dispute of material fact.  Accordingly, Trident's version of the facts

6   carries the day.  With this in mind, the court examines each of Ms. Rodarte's five claims

7   individually.

8       1.  Constructive Discharge

9       Ms. Rodarte alleges that she was constructively discharged from her job with

10  Trident because she was not permitted to leave Akutan three days before her contract

11  expired.  (Compl. ¶ 11-12.)  She alleges that the pain in her tooth was so bad that she had

12  no choice but to quit her job and seek medical treatment as soon as possible.  (*Id.*)

13      To demonstrate constructive discharge, a plaintiff must meet a demanding

14  standard.  The federal and Washington standards for constructive discharge are similar.

15  In Washington, "while resignations are presumed to be voluntary, a plaintiff may

16  overcome that presumption . . . by demonstrating a deliberate act by the employer that

17  made her working conditions so intolerable that a reasonable person would have felt

18  compelled to resign."  *Washington v. Boeing*, 19 P.3d 1041, 1049 (Wash. Ct. App. 2000).

19  Likewise, the federal standard requires a plaintiff to "show that the abusive working

20  environment became so intolerable that [the plaintiff's] resignation qualified as a fitting

21  response."  *Penn. State Police v. Suders*, 542 U.S. 129, 133 (2004).  This is an objective

22  standard.  *Id.* at 146-47.  Furthermore, "[a] plaintiff alleging constructive discharge must

1    show some aggravating factors, such as a continuous pattern of discriminatory

2    treatment." *Schindrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411-12 (9th Cir. 1996)

3    (citing *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990)).  The Ninth

4    Circuit has upheld factual findings of constructive discharge when the plaintiff was

5    subjected to incidents of differential treatment over a period of months or years.  *Watson*

6    *v. Nationwide Ins., Co.*, 823 F.2d 360, 361 (9th Cir. 1987).

7          Trident has demonstrated that Ms. Rodarte cannot meet this standard.  Trident's

8    evidence demonstrates that there was no "deliberate act" by any Trident employee to

9    make Ms. Rodarte's working conditions intolerable, *Boeing*, 19 P.3d at 1049, and that

10   indeed Ms. Rodarte's supervisor, Mr. Heine, did not know that Ms. Rodarte had been to

11   see the doctor for her toothache or even that she was Mexican.  (Heine Decl. ¶¶ 11-12,

12   18.)  There is nothing in the record to demonstrate that "the abusive working environment

13   became so intolerable that . . . resignation qualified as a fitting response."  *Suders*, 542

14   U.S. at 133.  The only thing that could possibly be construed as intolerable would be Ms.

15   Rodarte's tooth pain, and the evidence shows that she did not even seek treatment for that

16   pain immediately upon returning to Dutch Harbor or, for that matter, to Walla Walla.

17   (Rodarte Dep. at 129, 134.)  She did not have the offending tooth extracted until

18   December 27, 2011.  (*Id.*)  Likewise, Ms. Rodarte's treating physician in Akutan

19   concluded that Ms. Rodarte "could speak without apparent distress and did not appear to

20   be otherwise incapacitated by pain."  (Newberry Decl. ¶ 7.)  None of this suggests an

21   intolerable or abusive working environment, and certainly there is no evidence of

22   "aggravating factors, such as a continuous pattern of discriminatory treatment."

1  *Schindrig*, 80 F.3d at 1412.  Accordingly, Trident has met its summary judgment burden

2  for Ms. Rodarte's constructive discharge claim.  *See Celotex*, 477 U.S. at 323.

3     2.  Retaliation

4     Next, Ms. Rodarte alleges that Trident retaliated against her.  (Compl. ¶ 15.)  She

5  claims that, after she quit, Trident initially refused to hire her back for a month and a half.

6  (*Id.*)  To prevail on a retaliation claim, Ms. Rodarte must show:  (1) that she engaged in a

7  protected activity; (2) that she suffered an adverse employment action; and (3) that there

8  was a causal connection between the protected activity and the adverse employment

9  action.  *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004).  The

10  showings required for a retaliation claim under both of Title VII of the Civil Rights Act

11  of 1964 ("Title VII") and Washington law are identical, except for the causation element.

12  *Ellorin v. Applied Fishing, Inc.*, No. C12-1923JLR, 2014 WL 498969, at *9 (W.D. Wash.

13  Feb. 7, 2014) (stating that Title VII requires "but-for" causation, while WLAD only

14  requires that discrimination be a "substantial factor" in causing the retaliatory conduct).

15     Trident has demonstrated that Ms. Rodarte cannot succeed on her retaliation

16  claim.  To begin, Trident has shown that there was no adverse employment action.  As

17  discussed above, Ms. Rodarte was not constructively discharged.  In addition, Trident has

18  presented evidence that it rehired Ms. Rodarte for three seasons in 2012 and 2013 after

19  her toothache incident, including the very next season after the incident.  (Rodarte Dep. at

20  183-84.)  Trident has also presented evidence to show that (1) the delay in rehiring her

21  was a result of ordinary business practices and procedures or inadvertent errors (Korn

22  Decl. (Dkt. # 24) ¶¶ 2-7); (2) Ms. Rodarte was allowed to work longer at the end of the

1   season because she was hired later (*id.* ¶ 6); and (3) any delay in rehiring Ms. Rodarte

2   had no connection to the previous incident, and certainly had no connection to any

3   protected activity by Ms. Rodarte or any discriminatory motive on the part of any Trident

4   employee (*id.* ¶¶ 2-7; Heine Decl. ¶¶ 16-18.)  Ms. Rodarte has presented nothing to rebut

5   any of this evidence, so Trident is entitled to summary judgment on Ms. Rodarte's

6   retaliation claim.

7          3.  Employment Discrimination

8          Ms. Rodarte brings two further employment discrimination claims.  First, she

9   claims that Trident's actions against her amounted to age discrimination.  (Compl. ¶¶ 12,

10  21, IV.2-3.)  She alleges that "[y]ounger employees are given the opportunity to seek

11  medical assistance when needed" and that "if she had been of a different age . . . her

12  employers would have excused her early." (*Id.* ¶ 21.)  Second, she claims that Trident's

13  actions against her amounted discrimination on the basis of her national origin.  (*Id.*

14  ¶¶ 12, 21, IV.2-3.)  Her allegations in this regard are cursory, but she asserts vaguely that

15  she would have been treated differently if she had not been Mexican.  (*Id.* ¶ 21.)

16         The court analyzes each of these claims under the *McDonnell-Douglas* burden-

17  shifting approach used for summary judgment motions in Title VII employment

18  discrimination cases.  *See, e.g., Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018,

19  1028 (9th Cir. 2006).  Under this approach, the employee has the initial burden to

20  establish a *prima facie* case of discrimination.  *Id.*  This creates a presumption of

21  discrimination.  *Id.*  The burden then shifts to the employer, who must rebut the

22  presumption by producing admissible evidence showing a "legitimate, nondiscriminatory

ORDER- 11

1   reason" for the challenged action.  *Id.*  If the defendant does this, the presumption of

2   discrimination disappears and the burden shifts back to the employee to meet the ordinary

3   standard of proof required for summary judgment.  *Id.*  In other words, summary

4   judgment is not appropriate if, based on the evidence in the record, a reasonable jury

5   could conclude by a preponderance of the evidence that the defendant undertook the

6   challenged employment action for a discriminatory reason.  *Id.*

7          Here, Ms. Rodarte has not met her initial burden of establishing a *prima facie*

8   discrimination case.  This is true with respect to both age and national origin

9   discrimination.  To show a *prima facie* case of age discrimination, Ms. Rodarte must

10  demonstrate that (1) she was at least forty years old; (2) she was performing her job

11  satisfactorily; (3) she was discharged or otherwise adversely impacted; and (4) she was

12  either replaced by a younger employee or discharged under circumstances otherwise

13  giving rise to an inference of age discrimination.  *Sheppard v. David Evans and Assoc.*,

14  694 F.3d 1045, 1049 (9th Cir. 2012).  To show a prima facie case of disparate treatment

15  discrimination based on national origin, Ms. Rodarte must show that (1) she belongs to a

16  class of persons protected by Title VII; (2) she performed her job satisfactorily, was

17  qualified, and met the legitimate expectations of her employer; (3) she suffered an

18  adverse employment action; and (4) Trident treated her differently than a similarly

19  situated employee who does not belong to the same protected class.  *Cornwell*, 439 F.3d

20  at 1028; *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282-83 (7th Cir. 1977).

21         Ms. Rodarte's claims fail for several reasons.  First, for both claims, Trident has

22  demonstrated with evidence that Ms. Rodarte did not suffer the requisite adverse

ORDER- 12

1   employment action.  She was not discharged—she quit.  As discussed above, there was

2   no constructive discharge.  Further, Trident hired Ms. Rodarte back for three seasons

3   after her 2011 toothache incident.  (Rodarte Dep. at 183-84.)  To succeed on her claims,

4   Ms. Rodarte must show that Trident took some negative action toward her as a result of

5   the alleged discrimination.  *Cornwell*, 439 F.3d at 1028; *Sheppard*, 694 F.3d at 1049.

6   She has not done so.  As such, Trident's evidence to the contrary carries the day.  Second,

7   for both claims, Ms. Rodarte has come forth with no evidence whatsoever that any

8   alleged adverse action was the result of discrimination.  For age discrimination, she has

9   not shown that she was replaced by a younger employee or discharged under

10  circumstances otherwise giving rise to an inference of age discrimination.  *Sheppard*, 694

11  F.3d at 1049.  There is simply nothing in the record to demonstrate this, nor are there

12  even sufficient non-conclusory allegations to this effect in her complaint.  (*See generally*

13  Compl.)  The same is true with respect to national origin discrimination:  there is nothing

14  in the record to show that Trident treated Ms. Rodarte differently than a similarly situated

15  employee who does not belong to the same protected class, or that for any reason Ms.

16  Rodarte would have been treated differently if she had not been Mexican.  *Cornwell*, 439

17  F.3d at 1028.  Indeed, her supervisor, Mr. Heine, testifies that he did not even know she

18  was Mexican before she filed this lawsuit.  (Heine Decl. ¶ 18.)

19      Given all of this, the court concludes that summary judgment is appropriate with

20  respect to Ms. Rodarte's employment discrimination claims because she has not met her

21  burden under *McDonnell Douglas* of making a *prima facie* showing of age or national

22  origin discrimination.

ORDER- 13

4.  <u>Defamation</u>

Fourth, Ms. Rodarte alleges a defamation claim based on Trident's participation in the Alaska Human Rights Commission's investigation of her discrimination claims.  (*Id.* ¶¶ 19-20.)  She alleges that Trident employees lied to the Commission, which resulted in a "report full of lies" that "destroys her work reputation."  (*Id.*)  To prove a claim for defamation, Ms. Rodarte must show:  (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages.  *Commodore v. Univ. Mech. Contractors, Inc.*, 839 P.2d 314, 320 (Wash. 1992).

Trident has presented evidence showing it is entitled to summary judgment on this claim.  Specifically, the weight of the evidence presented by Trident shows that nothing it told the Commission was false in any way.  Indeed, the Commission's opinion is completely consistent with Trident's version of the facts and the evidence Trident presents to support that version of the facts.  (*See* Hendershott Decl. Ex. D.)  Ms. Rodarte presents nothing to rebut these facts or to otherwise demonstrate that she has any evidence to prove her defamation claim.  (*See* Dkt.)  Accordingly, the court concludes that summary judgment is appropriate with respect to this claim.

Having reached this conclusion, the court declines to address Trident's arguments with respect to Washington's "anti-SLAPP" statute or to award sanctions under that statute.  *See Rygg v. Hulbert*, No. C13-0864JLR, 2013 WL 6000060, at *4 n.3 (W.D. Wash. Nov. 12, 2013) (declining to address anti-SLAPP arguments where case is otherwise subject to dismissal); *Rickmyer v. Browne*, --- F. Supp. 2d ----, 2014 WL 460864, at *7, 9 (D. Minn. Feb 5, 2014) (declining to address anti-SLAPP sanctions in

1  light of merits-based dismissal); *New Show Studios LLC v. Needle*, No. 2:14-cv-01250-

2  CAS(MRWx), 2014 WL 2988271, at *5 (C.D. Cal. June 30, 2014) (concluding that it is

3  appropriate to address Rule 12(b)(6) dismissal before anti-SLAPP).

4          5.  Negligence

5          Last, Ms. Rodarte alleges a claim for negligence.  (Compl. ¶¶ 19, IV.2.)  She

6  alleges that "Trident had a duty to assist [her] to get medical help or allow her to leave

7  without quitting.  Trident violated that duty, causing [her] to have to quit her job."  (*Id.*

8  ¶ 19.)  To prove a claim for negligence under Washington law, a plaintiff must show (1)

9  the existence of a legal duty; (2) breach of that duty; (3) injury to the plaintiff resulting

10 from the breach; and (4) that the breach proximately caused the plaintiff's injury.  *Fabre*

11 *v. Town of Ruston*, 321 P.3d 1208, 1212-13 (Wash. Ct. App. 2014) (citing *Christensen v.*

12 *Royal Sch. Dist. No. 160*, 124 P.3d 283, 285 (Wash. 2005)).

13         Trident is entitled to summary judgment on this claim.  To begin, Ms. Rodarte has

14 presented no authority or argument for why Trident had a duty to obtain medical care for

15 her (*see* Dkt.), nor is it apparent why Trident would have this duty.  As such, Ms. Rodarte

16 has not demonstrated the existence of a legal duty, a prerequisite to a negligence claim.

17 *See Fabre*, 321 P.3d at 1212-13.  Second, Ms. Rodarte appears to concede that she does

18 not have a negligence claim.  In her deposition, she was asked whether, assuming Mr.

19 Heine did not know about her doctor visit on the morning she quit, Mr. Heine did

20 anything wrong.  (Rodarte Dep. at 232.)  She responded that "of course" he would not

21 have done anything wrong if he did not know of her visit at that time.  (*Id.*)  At present,

22 all the evidence in the record shows that Mr. Heine did not know of Ms. Rodarte's doctor

1   visit on that morning.  (*See, e.g.*, Heine Decl. ¶ 11; Newberry Decl. ¶ 15.)  As such, Ms.

2   Rodarte's failure to present evidence to the contrary is tantamount to an admission that

3   Mr. Heine, and therefore Trident, did not breach a duty to assist her in obtaining dental

4   care.  Third, no reasonable jury could conclude that Trident acted negligently based on

5   the evidence presently before the court.  Instead, the evidence suggests that Ms. Rodarte

6   never even properly asked Trident for help obtaining dental care for her toothache other

7   than her visit to Dr. Newberry.  (Heine Decl. ¶¶ 11-14; Rodarte Dep. 114-15, 124, 145.)

8   In contrast, there is no evidence suggesting that Trident breached any duty to assist Ms.

9   Rodarte, whatever that duty may have been.  As such, and for these reasons, Trident is

10   entitled to summary judgment on Ms. Rodarte's negligence claim.

## IV.    CONCLUSION

12         For the reasons discussed above, and having examined the record in its entirety,

13   the court GRANTS Trident's motion for summary judgment (Dkt. # 21) and DISMISSES

14   this case with prejudice.

15         Dated this 20th day of August, 2014.

JAMES L. ROBART
United States District Judge